Lawrence J. Semenza, III, Esq., Bar No. 7174
Email: ljs@skrlawyers.com
Christopher D. Kircher, Esq., Bar No. 11176
Email: cdk@skrlawyers.com
Jarrod L. Rickard, Esq., Bar No. 10203
Email: jlr@skrlawyers.com
Katie L. Cannata, Esq., Bar No. 14848
Email: klc@skrlawyers.com
SEMENZA KIRCHER RICKARD
10161 Park Run Drive, Ste. 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803
Facsimile: (702) 920-8669

*Attorney for Defendants Wells Fargo Merchant Services LLC; Wells Fargo Bank, N.A.; Wells Fargo & Co.; and First Data Merchant Services Corporation, now known as First Data Merchant Services LLC*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| LA MOJARRA LOCA, INC., <br><br> Plaintiff, <br><br> v. <br><br> WELLS FARGO MERCHANT SERVICES LLC; WELLS FARGO BANK, N.A.; WELLS FARGO & CO.; FIRST DATA MERCHANT SERVICES CORPORATION; DOES I-X INDIVIDUALLY; ROE CORPORATIONS I-X, <br><br> Defendants. | Case No.: 2:19-cv-00725-JCM-CWH <br><br> **DEFENDANTS WELLS FARGO MERCHANT SERVICES LLC'S; WELLS FARGO BANK, N.A.'S; WELLS FARGO & CO.'S; AND FIRST DATA MERCHANT SERVICES CORPORATION, NOW KNOWN AS FIRST DATA MERCHANT SERVICES LLC'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS OR ALTERNATIVELY TRANSFER VENUE** |

In response to Defendants' Motion to Dismiss,[1] Plaintiff argues only the Agreement's notice-of-claim and limitation-of-liability provisions are unconscionable, but Plaintiff fails to plead any factual allegations supporting these arguments, which in any event are contrary to New York's well-established case law. Moreover, Plaintiff wholly fails to address Defendants' argument for dismissal of Plaintiff's duplicative unjust enrichment claim or dismissal of Wells

---

[1] The caption in Plaintiff's Opposition curiously includes different parties than those identified in Plaintiff's Complaint. Defendants therefore use the caption as originally styled in the Complaint.

Fargo & Co. and First Data Merchant Services LLC. Dismissal of the Complaint with prejudice is therefore proper and appropriate. Alternatively, to the extent any claims remain (they should not), Plaintiff has acquiesced to the transfer of this case to the United States District Court for the Eastern District of New York by failing to address those arguments also.

## ARGUMENT

### 1. New York law on unconscionability

Plaintiff's Opposition argues only that the notice and limitation-of-liability provisions in the Agreement are unconscionable and should not be enforced. Plaintiff's argument is contrary to well-settled New York law and therefore necessarily fails.

New York courts will only find a contract unconscionable when it is "so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable according to its literal terms." *Suquin Zhu v. Hakkasan NYC LLC*, 291 F. Supp. 3d 378, 387 (S.D.N.Y. 2017). "There is a presumption of conscionability when the contract is between businessmen in a commercial setting." *Process America, Inc. v. Cynergy Holdings, LLC*, 35 F. Supp. 3d 259, 263 (E.D.N.Y. 2014). Moreover, a contract provision will be deemed unconscionable only where it is both procedurally and substantively unconscionable when made. *NML Capital v. Republic of Argentina*, 621 F.3d 230, 237 (2d Cir. 2010).

As discussed below, Plaintiff wholly fails to sufficiently assert any factual allegation or make any argument supporting its unconscionability claims.

### 2. Plaintiff has not pled any factual allegation such that the Court should even entertain any unconscionability argument.

Critically, Plaintiff's Complaint contains no factual support for any argument that any provision of the Agreement is unconscionable, and thus the Court should not even consider these arguments. In short, Plaintiff attempts to include in its Opposition conclusory allegations not contained in the Complaint, such as Plaintiff "lacked the business expertise" and "never had any bargaining power or a choice as to entry into the contract." (Opp'n at 6, 8, 11–12). Any such allegation not included in the Complaint cannot form the basis for opposition to the Motion to Dismiss. *Woodbury Law, Ltd. v. Bank of Am.*, No. 2:15-CV-603 JCM GWF, 2015 WL 3994956,

at *3 (D. Nev. July 1, 2015) ("Plaintiff's response improperly relies on information that is not in its amended complaint. Plaintiff attaches additional exhibits that were not included with its complaint to attempt to bolster its standing. When considering a motion to dismiss, a court may reference only those facts alleged within the complaint itself."); *Caldwell v. Compass Entm't Grp.*, LLC, No. 2:12-CV-00458-KJD, 2012 WL 5456075, at *1 (D. Nev. Nov. 6, 2012) ("Further, claims must be based on facts asserted in the complaint, not in his response to the motion to dismiss.").

Plaintiff's Complaint does not even contain factual allegations that could support a claim for relief under *Iqbal* and *Twombly* and must therefore be dismissed.

### 3. Plaintiff's arguments that the Agreement's notice-of-claim and limitation-of-liability provisions are procedurally unconscionable lack merit.

As discussed above, Plaintiff's Complaint does not contain any factual allegation that could support any argument in favor of unconscionability. Even based on the improper statements in its Opposition, Plaintiff's arguments about unconscionability lack merit.

Procedural unconscionability addresses the contract formation process and alleged lack of meaningful choice. *Zam & Zam Super Market, LLC v. Ignite Payments, Inc.*, 736 Fed. App'x 274 (2d Cir. 2018). Courts consider factors including (1) the size and commercial setting of the transaction, (2) the use of deceptive or high-pressure tactics, (3) the use of fine print in the contract, (4) the education and experience of the party claiming unconscionability, and (5) the disparity in bargaining power. *Gillman,* 73 N.Y.2d at 11. Importantly, "the doctrine of unconscionability has little application in a commercial setting because it is presumed that businessmen deal at arm's length with relative equality of bargaining power." *Preferred Capital, Inc. v. Best Cigars, Inc.*, 2005 WL 3115262 (N.Y. App. Div. Nov. 4, 2005) (finding no unconscionability in leasing contract between financier and merchant for an ATM terminal).

Plaintiff argues, without any supporting factual allegation, that a disparity of bargaining power existed between the parties without an opportunity to negotiate. (Opp'n at 12:4–5). But, as Plaintiff acknowledges in its Opposition, disparity in bargaining power between the parties to the Agreement is not enough to hold an agreement enforceable. (Opp'n at 11:22–23). "It is only

1 when inequality in bargaining power is coupled with high pressure tactics that coerce [a party's]
2 acceptance of onerous terms that a signatory can be considered to have lacked a meaningful
3 choice." *Suquin Zhu*, 291 F. Supp. 3d at 387.

4       Plaintiff fails to allege (nor can it allege) any "high pressure" tactics on the part of any
5 Defendant. (*See* Compl. *generally*.) Rather, Plaintiff complains in its Opposition it "had to take
6 the contract as it was written or leave it" "without any room for negotiation[.]" (Opp'n at 12:1–
7 3). However, an agreement is not rendered procedurally unconscionable simply because it was
8 entered into on a take-it-or-leave it basis. *See Anonymous v. JP Morgan Chase & Co.*, 2005 WL
9 2861589, *6 (S.D.N.Y. Oct. 31, 2005) (holding a Cardmember Agreement on a "printed form"
10 and "offered on a take-it-or-leave-it basis" was not unconscionable); *G& R Moojestic Treats,*
11 *Inc. v. Maggiemoo's Intern., LLC*, 2004 WL 1110423 (S.D.N.Y. May 19, 2004) ("The fact that
12 the Franchise Agreement was presented on a take-it-or-leave-it basis and was not subject to
13 negotiation renders it neither a contract of adhesion nor unconscionable."). Thus, allegedly
14 offering Plaintiff a take-it-or-leave-it contract is not a "high pressure tactic".

15       Plaintiff lastly takes issue with the format of the Agreement, protesting that "provisions
16 are isolated from each other" in a "multi-page gap." Courts, however, routinely reject
17 unconscionability claims based on such arguments. *See, e.g.*, *Molina v. Kaleo, Inc.*, 363 F. Supp.
18 3d 344, 351–52 (S.D.N.Y. 2019) (rejecting Plaintiff's argument that an agreement was
19 procedurally unconscionable where "Defendant [had allegedly] buried an arbitration and forum
20 selection clause deep within 22 pages of terms and conditions"); *Novak v. Overture Servs., Inc.*,
21 309 F. Supp. 2d 446, 451 (E.D.N.Y. 2004) (finding arbitration clause enforceable even though
22 relevant portion occurred more than 300 lines into the document, viewable in ten-line
23 increments).

24       Here, Plaintiff's discontent with Sections 18.11 and 20.4 should similarly be rejected.
25 The notice-of-claim provision in Section 18.11 is preceded by the bold, highlighted heading:
26 "Fees; Adjustments; Collection of Amounts Due." (Exhibit B at ¶ 18). The 45-day notice
27 requirement is repeated in Paragraph 4 of the Confirmation Page signed by Plaintiff. (*See* Exhibit
28 C). Similarly, Defendant's limitation-of-liability provision in Section 20.4 also falls under a bold,

highlighted heading: "Representations, Warranties; Limitations on Liability; Exclusion of Consequential Damages" and is also discussed on the Confirmation Page (Exhibit B at ¶ 20; Exhibit C). And, as Plaintiff acknowledges, the limitation-of-liability provisions are entirely capitalized. (*See* Opp'n 4:21–25; Exhibit B at ¶ 20.4). Rather than obscuring the provision, as Plaintiff claims without legal support, the bold, highlighted heading and use of capitalized letters emphasizes the limitation-of-liability provision. *See Sherma Kolainu-Hear Our Voices v. ProviderSoft, LLC*, 832 F. Supp. 2d 194, 201 (E.D.N.Y. 2010) (finding no unconscionability where no "fine print" was utilized as "the disclaimer of all warranties occurred in capital letters," including the heading: "Limited Warranty and Disclaimer of Warranty").

Importantly, Plaintiff's signature on the Confirmation Page acknowledges Plaintiff "received . . . and read the complete Program Guide" and "agree[d] to comply with all terms set forth therein." (Exhibit C). Moreover, Plaintiff's "failure to read or understand a contract does not relieve the signer of its obligations thereunder." *Sequin*, 291 F. Supp. 3d at 387. Plaintiff's argument that "it is highly doubtful [Plaintiff] understood these to be the terms of the contract" is therefore untenable. (Opp'n at 10:22–25).

Plaintiff's arguments about procedural unconscionability lack merit.

**4. Plaintiff's arguments that the Agreement's notice-of-claim and limitation-of-liability provisions are substantively unconscionable also lack merit.**

Substantive unconscionability looks to the "substance of the bargain to determine whether the terms were unreasonably favorable to the party against whom unconscionability is urged." *Shema Kolainu*, 832 F. Supp. 2d at 202. Here, Plaintiff argues the Agreement's notice-of-claim provision is "unfair, against every fiber [of] public policy, and completely unreasonable . . . ."[2] Additionally, Plaintiff claims the limitation-of-liability provision is similarly unconscionable.

As discussed above, Plaintiff pleads no fact supporting any unconsionability argument, which in any event conflicts with New York law.

---

[2] Plaintiff urges this Court to consider the amount of money at stake when evaluating whether it sufficiently pled unconscionability. (Opp'n at 10:11). This position is contrary to New York law. Courts only consider the conditions *at the time the contract was made* when evaluating whether a contract is unconscionable. *See NML Capital*, 621 F.3d at 237 (2d Cir. 2010).

SEMENZA KIRCHER RICKARD
10161 Park Run Drive, Suite 150
Las Vegas, NV 89145

### a. Notice-of-claim provisions have been repeatedly upheld.

Courts have upheld and enforced virtually identical notice-of-claim provisions in similar merchant/processor agreements. For example, in *Benex LC v. First Data Merchant Services Corporation*, the Court dismissed a merchant's breach-of-contract claim because the merchant failed to comply with a nearly identical notice-of-claim provision. 2016 WL 6683475, *5–6 (E.D.N.Y. Nov. 14, 2016). Moreover, similar to Plaintiff's argument in this case, the merchant in *Benex* argued notice was futile because "if such notice is given, any determination by [First Data] is discretionary", as the contract stated First Data "shall not have any obligation to . . . effect any such adjustments." (*Compare id.* at *7 *with* Opp'n at 3:22–4:3; 4:15–20; 11:10–11). The District Court in *Benex* disagreed, finding the merchant mischaracterized the relevant language: "Section 18.10 of the Program Guide states that if a merchant notifies First Data <u>more than</u> sixty days after the adjustment should have been made, First Data may, in its discretion, assist the merchant and investigate the billing irregularity." *Id*. Plaintiff here similarly mischaracterizes the language in Section 18.11. (*See* Opp'n at 3:22–25; 10:4–12).

Plaintiff additionally argues the 45-day notice requirement is unreasonable because the transactions do not appear on Plaintiff's merchant statement. (Opp'n at 9:19–25). Courts have enforced an identical provision against a merchant who similarly alleged breach of contract for missing funds in its settlement account. *E.g., Starbrands Capital LLC v. Original MW Inc.*, 2017 WL 1013300, *9 (D. Mass. Mar. 15, 2017). The District Court held the notice-of-claim provision was unambiguous:

> Section 18.10 states that Starbrands was obligated to address any adjustments it believed needed to be made to its settlement account within 45 days after any debit or credit should have been effected. The Program Guide defines a settlement account as "an account at a financial institution designated by Client as the account to be debited and credited . . . for Card transactions, fees, Chargebacks, and other amounts due under the Agreement." Accordingly, the provisions of Section 18.10, including reference to the settlement account, do not, as Starbrands argues, only refer to "fees charged by [defendant]," but also include amounts debited and credited for card transactions such as the amounts at issue here.

*Id.* Because the merchant did not provide the requisite notice, the District Court found no breach of contract. *Id.* at *1; *accord Zam & Zam Super Market*, 736 Fed. App'x at 278 (rejecting a

1 merchant's argument that the 60-day notice requirement in the contract was unconscionable
2 where the provision "require[d] a business entity to review its monthly account statement and to
3 dispute in writing any charges . . . within sixty days in order to preserve those charges for
4 litigation" and concluding as a matter of law that "it is not grossly unreasonable to expect a
5 merchant to review its bill and provide written notice of any disputed charges within sixty
6 days").

7 As *shown* in *Benex* and *Starbrands*, the 45-day notice requirement is not, as Plaintiff
8 contends, "unreasonable" when disputing missing funds. In fact, New York courts have barred
9 recovery for failure to comply with far more limiting notice requirements. *See, e.g., Perl v. Smith*
10 *Barney, Inc.*, 230 A.D.2d 664, 665–61 (N.Y. App. Div. 1996) (recovery barred when plaintiff did
11 not object within the "contractually mandated ten-day period in which plaintiff was required to
12 object to any disputed charges"). Plaintiff's failure to comply with the notice requirement thus
13 bars recovery. *Zam & Zam Super Market, LLC v. Ignite Payments, LLC*, 2017 WL 6729854
14 (E.D.N.Y. Oct. 31, 2017).

15 Cleary, Plaintiff has failed to allege any fact supporting its claim that the notice-of-claim
16 provision is "grossly unreasonable"; in fact, Plaintiff readily admits in its Opposition the
17 transactions were noticeable upon close inspection (Opp'n at 9:20–21), which includes reviewing
18 statements for missing debit or credit that should have been effected. (Exhibit B at ¶ 18.11;
19 Exhibit C at ¶ 4). Plaintiff's argument that the notice provision is unreasonable and not
20 applicable to the missing funds is therefore entirely untenable and contrary to established case
21 law.

22        **i. The limitation-of-liability provision is not substantively unconscionable.**

23 New York courts permit limitations on liability between contracting parties, and such
24 limitations are not *per se* substantively unconscionable. *See, e.g., Process America, Inc.*, 35 F.
25 Supp. 3d at 263–64 (finding no evidence the limitation-of-liability clause that limited recovery to
26 four months of processing fees was unconscionable); *Russell Pub. Group, Ltd. v. Brown Printing*
27 *Co.*, 2014 WL 6790762 (S.D.N.Y. Dec. 2, 2014) (finding "limitation of liability" clause, which
28 expressly precluded plaintiff from collecting consequential damages, was "fully enforceable and

not unconscionable").

For example, in *Process America, Inc.*, an independent sales organization sought to recover damages from a credit card processing service and asked the district court to find the limitation of liability unconscionable. 35 F. Supp. 3d at 263. The independent sales organization argued it was not represented by counsel and lacked experience in the credit-card processing business at the time the agreement was made; thus, enforcing the limitation-of-liability provision would lead to a harsh, uneven allocation of economic power. *Id.* The district court rejected the argument, finding the independent sales organization provided no evidence of unconscionability. *Id.* The district court held:

> [The provision] is conspicuous and written in clear language, and states the limitation on [the credit processor's] "total cumulative liability" in no uncertain terms. Process America has provided the Court with little more than assertions by its executives that they would not have agreed to the contract if they understood that [the provision] would limit [the credit processor's] liability in exactly the way the provision states that it would. That is insufficient to show that the provision is unconscionable, especially in the context of a commercial contract like this one.

*Id.* at 263–64.

Similarly, the limitation-of-liability provision in the Agreement is enforceable. Like the independent sales organization in *Process America*, Plaintiff argues had it understood the terms of the contract, it would not have agreed to it. (Opp'n at 10:21–25; 11:15–16). Such an argument is insufficient, especially given the commercial context of the Agreement and Plaintiff agreed and acknowledged it reviewed and read the Agreement prior to executing it. Moreover, the fact Plaintiff's claimed damages were purportedly higher than the limit imposed by the Agreement's limitation-of-liability provision does not render this provision unenforceable. *Process America, Inc.*, 35 F. Supp. 3d at 264 ("Nor does the fact Process America's actual damages significantly exceed the limit imposed by [the limitation of liability] render that provision unenforceable.").

Even the cases Plaintiff cites in support of unconscionability uphold the limitation-of-liability provision at issue. *See In re Lyondell Chemical Co.*, 585 B.R. 41, 53–54 (S.D.N.Y. 2018) (holding the limitation of liability did not render the contract between a lender and its borrower "so unbalanced or oppressive that it should be set aside"); *Florence v. Merchants*

SEMENZA KIRCHER RICKARD
10161 Park Run Drive, Suite 150
Las Vegas, NV 89145

*Central Alarm Co.*, 51 N.Y.2d 793, 795 (N.Y. 1980) (upholding the limitation of liability in the commercial setting where the language was clear and there was no special relationship between the parties warranting relief from the contract).

Plaintiff's failure to comply with the notice provision is fatal to its Complaint, and Plaintiff's insufficient allegations of unconscionability do not provide otherwise. This Court should therefore dismiss Plaintiff's Complaint for failure to state a claim. To the extent this Court retains Plaintiff's claim (it should not), however, any recovery Plaintiff seeks must be limited to no more than $50,000 pursuant to the Agreement's limitation-of-liability provision.

### 5. Plaintiff abandoned its unjust enrichment claim and its arguments against dismissal of the other Defendants and transfer of venue.

Plaintiff fails to address in its Opposition Defendants' argument seeking dismissal of its unjust enrichment claim as duplicative of Plaintiff's breach-of-contract claim. Plaintiff has therefore abandoned this claim and it must be dismissed. Local Rule 7-2(d) provides that "The failure of an opposing party to file points and authorities in response to any motion, except a motion under Fed. R. Civ. P. 56 or a motion for attorney's fees, constitutes a consent to the granting of the motion." Moreover, this Court has held this rule applies in cases such as here when a party fails to address a *portion* of the moving party's motion. *Moore v. Ditech Fin., LLC*, No. 2:16-CV-1602-APG-GWF, 2017 WL 2464437, at *2 (D. Nev. June 7, 2017), *aff'd,* 710 F. App'x 312 (9th Cir. 2018) (holding that the plaintiff "conceded to dismissal" of a claim "by failing to oppose the defendants' arguments *on this point* in their motion to dismiss" (emphasis added)).

Similarly, Plaintiff's Opposition does not address Defendants' arguments that Wells Fargo & Co. ("Wells Fargo") and First Data Merchant Services LLC ("First Data") must be dismissed because they are not parties to the Agreement and because Plaintiff's pleading contains no factual allegation to support any claim against either. Nor does Plaintiff respond to Defendant's motion in the alternative to transfer venue to the United States District Court for the Eastern District of New York pursuant to the forum-selection clause in the Agreement. (Exhibit B ¶ 33.2).

Plaintiff's unjust enrichment claim must therefore be dismissed; Wells Fargo and First Data must therefore be dismissed; and to the extent this Court does not dismiss Plaintiff's breach-of-contract claim as to WFMS and WFB (it should), this case must be transferred to the Eastern District of New York.

## CONCLUSION

For the foregoing reasons and the reasons detailed in Defendants' Motion to Dismiss or Alternatively Transfer Venue, Plaintiff's Complaint must be dismissed with prejudice in its entirety or alternatively transferred to the United States District Court for the Eastern District of New York.

DATED this 27th day of June 2019.

SEMENZA| KIRCHER| RICKARD

*/s/ Jarrod L. Rickard*
Lawrence J. Semenza, III, Esq., Bar No. 7174
Christopher D. Kircher, Esq., Bar No. 11176
Jarrod L. Rickard, Esq., Bar No. 10203
Katie L. Cannata, Esq., Bar No. 14848
10161 Park Run Drive, Suite 150,
Las Vegas, NV 89145

*Attorney for Defendants Wells Fargo Merchant Services LLC; Wells Fargo Bank, N.A.; Wells Fargo & Co.; and First Data Merchant Services Corporation, now known as First Data Merchant Services LLC*

**CERTIFICATE OF SERVICE**

I am employed by the law firm of Semenza Kircher Rickard in Clark County, Nevada. I am over the age of 18 and not a party to this action. The business address is 10161 Park Run Drive, Suite 150, Las Vegas, Nevada 89145.

On the 27th day of June 2019, I served the document(s), described as:

**DEFENDANTS WELLS FARGO MERCHANT SERVICES LLC'S; WELLS FARGO BANK, N.A.'S; WELLS FARGO & CO.'S; AND FIRST DATA MERCHANT SERVICES CORPORATION, NOW KNOWN AS FIRST DATA MERCHANT SERVICES LLC'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS OR ALTERNATIVELY TRANSFER VENUE**

☒    by placing/sending the ☐ original ☒ a true copy thereof

☒ a.   via **ECF System** *(You must attach the "Notice of Electronic Filing", or list all persons and addresses and attach additional paper if necessary)*

> Mills & Anderson
> Daniel W. Anderson, Esq.
> danderson@millsandmillsllc.com
> *Attorney for Plaintiff*

☐ b.   **BY U.S. MAIL.** I deposited such envelope in the mail at Las Vegas, Nevada. The envelope(s) were mailed with postage thereon fully prepaid. I am readily familiar with Semenza Kircher Rickard's practice of collection and processing correspondence for mailing. Under that practice, documents are deposited with the U.S. Postal Service on the same day, which is stated in the proof of service, with postage fully prepaid at Las Vegas, Nevada in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after the date stated in this proof of service.

☐ c.   **BY PERSONAL SERVICE.**

☐ d.   **BY DIRECT EMAIL.**

☐ e.   **BY FACSIMILE TRANSMISSION.**

I declare under penalty of perjury that the foregoing is true and correct.

*/s/ Olivia A. Kelly*
An Employee of Semenza Kircher Rickard